ETNA STEEL & IRON COMPANY *v.* HAMILTON.

1. An equitable petition by a bondholder to foreclose in his own name the trust deed, wherein it is alleged that permission for him so to do is given in the trust deed upon the trustee's refusal to bring the action on demand, and that the trustee has refused to foreclose on demand made upon him, and that there exists an emergent condition requir-

ing the immediate interposition of a court of equity to prevent serious loss from an impending tax sale of a part of the mortgaged property, does not show on its face that the plaintiff is not entitled to a pendente-lite receiver in aid of the relief sought.

2. Where a bondholder files an equitable petition for the foreclosure of a trust deed and to protect the mortgaged property from an impending tax sale, and a temporary receiver is appointed, who procures a bank to pay the executions, which are assigned to the bank; and where on the interlocutory hearing for a permanent receiver it appears that the bondholder is not entitled to foreclose the mortgage (the right to foreclose being in the trustee, and there being no refusal on his part to act), and the mortgagor offers to pay the tax executions which were proceeding against the property, it is error to refuse such offer and to appoint a permanent receiver.

NOVEMBER 15, 1911.  REHEARING DENIED DECEMBER 15, 1911.

Injunction and receiver.  Before Judge Edwards.  Polk superior court.  December 15, 1910.

The Etna Steel and Iron Company, a domestic corporation, on January 1, 1907, executed to the Empire Trust Company of New York, as trustee, a deed of trust to secure an issue of $600,000 of bonds.  The bonds were of the denomination of $1,000 each, due at twenty years, with interest payable semi-annually.  It was covenanted in the deed of trust: that the Etna Steel and Iron Company would promptly pay the bonds and interest coupons as they severally matured; that it would pay all taxes assessed against the mortgaged property, take care of and preserve the same, keep the property liable to be destroyed by fire insured in some good company, and, in case of loss before the maturity of the bonds, the money received from the insurance company by the trustee at the written request of the Etna Company shall be paid over to it and by it used in payment of expenses of repairing, rebuilding, or replacing the property burned or damaged by fire; that the board of directors of the Etna Company shall have the right to sell property which may become worn, damaged, or otherwise unsuitable to be used in the operation of its property, provided an equivalent in value be substituted in lieu thereof, without liability or responsibility of the trustee for the acts of the Etna Company in this respect.  The deed conferred upon the trustee a power of sale in case of default by the Etna Company in any condition or covenant in the trust deed, or in the payment of any bond at maturity or interest coupon when due, or any other default which should continue for a year thereafter.  It was further provided, in case of default in any of the covenants or conditions, that the

trustee, instead of exercising the power of sale, should be entitled in its discretion to proceed by bill in equity and other appropriate proceedings in any court of competent jurisdiction to foreclose the mortgage or trust deed, and enforce the rights, liens, and securities of the trustee and bondholders; provided that no foreclosure proceedings should be commenced, by reason of the non-payment of the interest, until one year after default in the payment of the interest. It was stipulated that it was no part of the duty of the trustee to see to or effect insurance against fire, to keep itself advised or informed as to the payment of taxes, or to require such payment to be made, or to see that the Etna Company fulfilled any of its covenants. The deed also contained these stipulations: "The trustee shall be under no obligation or duty to perform any act hereunder, or to defend any suit in respect hereof, except upon the request of the company, or of the bondholders of a majority in value of the bonds outstanding hereunder, and unless fully indemnified to its satisfaction; and the trustee shall not be bound to recognize any person as a bondholder unless and until his bonds are submitted to the trustee for inspection if required, and his title thereto satisfactorily established, if disputed. . . The exclusive right of action hereunder shall be vested in the trustee until the refusal on its part to act, and no bondholder or bondholders shall be entitled to enforce performance of these presents until after demand made on the trustee accompanied by a tender of indemnity satisfactory to the trustee as aforesaid, and the refusal of the trustee to act in accordance with such demand as hereinafter provided."

On February 28, 1910, Harper Hamilton filed an equitable petition against the Etna Company and the Empire Trust Company, praying for a foreclosure of the trust deed and the appointment of a receiver in aid thereof. He alleged: that he was the owner of 33 bonds, and brought the petition in behalf of himself and all the bondholders of the Etna Company; that the Etna Company had defaulted in the payment of interest coupons for more than a year; that it had broken its covenant in respect to effecting insurance; that it had failed to keep the property in repair and had allowed the same to be wasted; that it had sold off property and had not replaced the same as it covenanted to do; that it had failed to pay the taxes upon the property to the extent of $1,600; that it had collected approximately $6,000 from loss on fire-insurance policies, and had

not reinvested same according to the terms of the trust deed; that in writing he had called the attention of the trustee, the Empire Trust Company, to the default in the payment of interest and of taxes and to the fact that default in the payment of interest had continued for more than a year, and also advised it that default had been made in the keeping up of the insurance, and had demanded of the trustee that it proceed to enforce the mortgage or trust deed according to its terms for the protection of the bondholders, and had offered to furnish to the trustee such indemnity as it required under the terms of the trust deed; and that he had especially called the attention of the trustee to a threatened sale of the mortgaged property for taxes on the first Tuesday in March, and demanded of the trustee that it take legal proceedings to foreclose the mortgage and have a receiver appointed in time to prevent the sale of the property for taxes, but that the trustee 'had refused to institute such proceedings. The prayers were, for the appointment of a receiver, the foreclosure of the mortgage, and a distribution of the proceeds of the foreclosure sale among the bondholders. A temporary receiver was appointed, and he was authorized to borrow sufficient money with which to pay off the fi. fas.; and a rule nisi was granted, fixing a date for a hearing of the application for the appointment of a permanent receiver.

Certain holders of 61 bonds were allowed to intervene, and in their intervention they alleged: that T. N. Barnsdall, the president of the Etna Company, was the owner of a majority of its common stock, and also owned or controlled a majority of its bonds; that at the request of Barnsdall the trustee had instituted in the United States court a suit to foreclose the trust deed, wherein it was alleged that there were $500,000 bonds outstanding, whereas there were not so many bonds issued, and that Barnsdall had not applied the proceeds of the bonds which he claimed to have sold to himself to any beneficial use of the Etna Company; that the trustee has recognized Barnsdall as the holder or representative of the holders of the bonds, and will not attack the right of any holder to collect the same. These intervenors alleged the property to be of much less value than the amount of the bonds secured by the trust deed, and prayed for an accounting of the bonds issued, and that such as were illegally issued be declared null and void.

On September 20, the court passed an order providing for the service of the Empire Trust Company by publication agreeably to the statute.  On September 24, the Etna Company interposed its demurrers, general and special.  The application for permanent receiver came on to be heard on December 13, 1910, and on that day the Empire Trust Company entered its special appearance for the purpose of objecting to the jurisdiction of the court on the ground that it had not been properly served.  This motion was overruled.  The Etna Company filed its answer, denying the right of the plaintiff to sue, because of the failure to comply with the stipulations of the trust deed.  It admitted its default in the payment of interest, and the right of the Empire Trust Company to have a foreclosure of the trust deed; it admitted that the taxes were not fully paid, but alleged that the greater part of the 1908 taxes had been paid and the execution representing the balance had been transferred to and was held by the Commercial Bank, and at the time the 1909 taxes matured all the property was in the charge of A. T. Hamilton, a brother of the plaintiff, and now the temporary receiver.  It admitted that all of its property was not insured, but denied that it was necessary to insure all the property; and alleged that the property was under the management of A. T. Hamilton for nearly twelve months, and all the defaults as to the failure to keep the property insured had been known to the plaintiff for some time, without any objection on his part.  While admitting its default in the payment of interest, and keeping up the insurance, and not operating the property, because it did not believe it could be profitably operated as it had been done, the Etna Company denied that there had been any waste of the property; and alleged that the money collected from fire insurance was properly applied to the obligations of the company.  It further answered: that it was, on March 1, 1910, and is now, ready, able, and willing to take over and control the tax executions, and does now repeat this offer and willingness, and makes a continuing offer and tender to take up the executions and relieve the temporary receiver thereof at any time by permission of the court, and permission to do so was applied for; that the tax executions had not been paid by the temporary receiver, but were held by the Commercial Bank under a transfer made to the bank; that the bank holds no other security for the payment of the taxes except the

property of the company, which is subject to the lien of the tax executions independently of the receivership; that the company would have taken up the tax executions on March 1, 1910, if its representative had not been informed early in the morning that a temporary receiver had been appointed. It was further alleged that the trust company had filed its original bill of foreclosure in behalf of all the bondholders, under and in pursuance of the terms and, conditions of the trust deed, against the Etna Company in the circuit court of the United States for the northern district of Georgia, and that the mortgage had been foreclosed and a receiver appointed. The Etna Company pleaded the pendency of the foreclosure proceedings in the circuit court of the United States, as a bar to the alleged right of the plaintiff to maintain this action in this court, which depends upon and must be determined by the terms of the trust deed, which the plaintiff is seeking to foreclose. The Etna Company, in answer to the intervention, admitted that T. N. Barnsdall owned a majority of the stock, and also owned or controlled a majority of the bonds of the company. It denied that the board of directors or the individual members thereof were under the control of Barnsdall; and alleged that the plaintiff in this case could obtain adequate and complete relief regardless of the board of directors, in the pending suit brought by the trustee to foreclose the mortgage. It denied that its bonds had been disposed of unlawfully and without authority, or that par value had not been paid for them, and alleged that the proceeds thereof had been used in the acquisition of property, both real and personal, for the equipment and maintenance thereof. The trust company filed its answer, in which it averred that only $450,000 par value of bonds had ever been certified and issued. It admitted that the Etna Company had made default in the performance of some of the covenants and conditions in the trust mortgage, and that the right accrued to the trustee to have a foreclosure of the trust mortgage according to the terms of its provisions, but denied that any such right accrued and existed in favor of the plaintiff, either at the time of filing his petition or since. It denied that either the plaintiff or any one for him had ever made demand upon it as trustee to foreclose the mortgage in accordance with the terms and provisions of the mortgage. It alleged that all of the communications between the parties relative to this subject are in writing, and it

submitted that the writings affirmatively showed that no demand and refusal thereof, such as would entitle the plaintiff to foreclose the mortgage, had ever been made. It denied that it ever refused after demand to proceed to foreclose the mortgage. It set up that on the 4th day of April, 1910, as trustee under the trust mortgage, it filed its bill in the circuit court of the United States for the northern district of Georgia against the Etna Steel and Iron Company, alleging default under the terms and conditions of the trust mortgage, and prayed for the foreclosure of the mortgage and for a receiver in aid thereof, being thereto duly requested by the holders of a majority in number of the outstanding bonds, and being furnished indemnity in compliance with the provisions of the mortgage in that regard; that on the hearing a receiver was duly appointed, who had duly qualified, and that subsequently the Etna Company had made an appearance by answer, admitting its defaults and insolvency, and consenting, in so far as with propriety it might do so, to the appointment of a receiver; and that on June 20, 1910, a decree of foreclosure was granted by the court, and citation was duly issued and published to all creditors claiming under the mortgage to appear and submit their claims to the court; an exemplified copy of the suit being attached. The trustee further alleged that it was effectively proceeding to exercise its discretion and discharge its duties under the trust deed for the benefit of all bondholders, and pleaded the pendency of the suit in the United States court in bar of the plaintiff's action. On the last-named day the court overruled the demurrer of the Etna Company, and the motion to dismiss, made by the Empire Trust Company, and, after hearing evidence, appointed a permanent receiver. The exceptions are to the interlocutory grant of a receiver, to the overruling of the demurrers and motion to dismiss, and to certain rulings on evidence.

*W. A. Wimbish* and *W. W. Mundy,* for plaintiffs in error.

*King & Spalding & Underwood* and *Bunn & Bunn,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The petition alleged the maturity of the bonds by default in the payment of interest for more than a year and the right of a bondholder under the terms of the trust deed to foreclose it, and also an emergent condition requiring the immediate interposition of a court of equity to prevent serious loss from an impending

tax sale, and it can not be said that on its face it did not present a case for the appointment of an interlocutory receiver in aid of the relief sought.

2. On the hearing the plaintiffs submitted the correspondence between themselves and their attorneys, and the trustee and its attorneys, upon which they relied to establish their right to foreclose the mortgage under the terms of the trust deed. This correspondence began eighteen days before the plaintiff filed his petition. The initial letter was from the plaintiff to the trustee, dated February 10, 1910, to the effect that the plaintiff was the holder of 33 bonds, and that interest was in default for more than a year; and requested the trustee to proceed to foreclose the mortgage, offering such indemnity as the trustee might require under the terms of, the deed of trust. The receipt of this letter was acknowledged on the 16th of February by the secretary of the trustee, who stated therein that the trustee would be glad to do anything it should do under the mortgage, and had referred the matter to its counsel, and would communicate with the plaintiff as soon as advised; and that the trustee would require, in case it instituted proceedings, a deposit of such sum in money as might be agreed upon to indemnify against expenses. On February 24th the plaintiff telegraphed the trustee: "Property Etna Steel and Iron Company advertised. for taxes. Be sold March first. Authorize me to file bill in your name, or shall I proceed in my name for bondholders." On the same day counsel for the trustee wrote to plaintiff that they would be glad to foreclose the mortgage, but they would like to have the plaintiff to do certain things; that the trustee would require indemnity before instituting such proceedings, and he thought that this should be in the sum of at least $1,500, to cover possible costs and expenses, and would prefer that the indemnity be provided by deposit in cash, but, if this was not convenient, to inform him what other form of indemnity plaintiff would like to offer. He requested detailed information as to the non-payment of taxes and non-insurance of the property, and he referred to the provision in the mortgage permitting a bondholder to pay the taxes and insure the property, and offered to advise the trustee to attend to this if the plaintiff would furnish it with funds necessary for the purpose. Reference was made to the provision in the trust deed relative to the default in the payment of the interest for one year after due

demand for payment, and full information was asked as to whether demand for payment of the coupons alleged to be overdue had been made. It was further stated: that the trustee, before beginning foreclosure proceedings, would require some proof as to the fact of the plaintiff's ownership of the bonds, either by the deposit of the bonds or by some way satisfactory to it; that the mortgage provided that the trustee was under no duty or obligation to act thereunder unless requested by a majority of the holders of bonds outstanding, but the writer did not believe that this interfered with the trustee's right to act upon the plaintiff's request, although he suggested it would be better to have a larger number of bondholders making the request. On the next day counsel for the trustee wrote to counsel for the plaintiff a similar letter. The foregoing epitomizes the correspondence between the trustee and the plaintiff, prior to the institution of the suit. We do not think, under these circumstances, that the plaintiff brought himself within the terms of the mortgage, so as to give him the right of foreclosure under the contract because of a failure of the trustee to institute proceedings. The trust deed expressly stipulated that the exclusive right of action was vested in the trustee until refusal on its part to act, and no bondholder should be entitled to enforce performance of its covenants until after demand had been made on the trustee, accompanied by a tender of indemnity satisfactory to the trustee, and the refusal of the trustee to act in accordance with such demand. It appeared in the evidence that there was a prior mortgage of $100,-000 upon the property, and the trustee was apprehensive that the proceeds arising from the sale of the property would not exceed this sum. Prior to the filing of his petition the plaintiff did not intimate that the indemnity required by the trust company was exorbitant in amount, or in any wise oppressive. The plaintiff failed to offer the indemnity required, and there was no refusal on the part of the trustee to proceed to enforce the trust deed. Under the undisputed facts the plaintiff had no right as a bondholder to institute the suit in opposition to the right of the trustee.

But it is contended, that, inasmuch as the property was about to be sold for taxes, the conditions were emergent and justified the plaintiff, for the protection of himself and other bondholders, to protect himself against serious loss resulting from a sale of the property. On the hearing it was made to appear that in 1908 an

execution for taxes for the sum of $525 had been issued against the Etna Company, and that this tax fi. fa. had been transferred to the Commercial Bank; that in 1909 a special fi. fa. and a general fi. fa., aggregating $1,025, had been issued, and, at the instance of the county attorney, were placed in the hands of the sheriff for enforcement. The sheriff levied upon certain personal property, when a brother of the plaintiff, who was the manager of the Etna Company, suggested that the levy on the personalty be dismissed and that the land embracing the pumping station be levied upon. Accordingly the sheriff levied upon certain described realty and a pumping outfit located thereon. This land embraced the water supply, which furnished the chief value to the other mining property. Immediately after his appointment, the temporary receiver procured a bank to take up the executions upon an assignment of the fi. fas. to the bank. The Etna Company offered to pay these taxes, provided the receivership was dismissed; and this offer was declined. Under the terms of the trust deed the trustee was under no obligation to look after the payment of taxes. The Etna Company covenanted to pay the taxes; and its default, not that of the trustee, produced the emergent condition, to relieve which the bondholder filed his action. Where there is a duty on a trustee to act promptly to protect the mortgaged property, and he fails or neglects to perform this duty upon demand, a bondholder may institute a suit in his stead for the preservation of the property. 3 Cook on Corporations, § 830. But it does not follow that a right to file a proceeding to protect the property from an impending peril will justify a bondholder to institute proceedings to foreclose the mortgage contrary to its terms. The Etna Company pleaded that after the appointment of the temporary receiver, it had been ready, willing, and able to take up the tax executions and would have done so on the day of sale but for the appointment of a temporary receiver and the grant of an order restraining it from interfering with its property or rights, and in its answer it made an offer to take up such executions and asked the permission of the court to do so. The court should have allowed the taxes to be paid, for if they were paid there would be no longer any necessity for the receivership to preserve the property. It did not appear what particular property was insured and what was not insured, but the failure of the Etna Company's covenant to insure would not be sufficient

ground to deprive the trustee of his exclusive right, under the contract, to foreclose the mortgage.

The facts pleaded in the intervention do not affect the right of the trustee to bring the suit. The trustee has the right to foreclose the mortgage, and in that foreclosure suit the plaintiffs would have the right to intervene for the purpose of showing that any bonds presented to the trustee for payment had been illegally issued, or were otherwise not entitled to share with the plaintiffs in the distribution of the proceeds of the sale of the property. 3 Cook on Corp. § 848 (b).

There is no dispute that the mortgage is ripe for foreclosure; the Etna Company admits its defaults; and the contest is between the trustee and minority bondholders as to the right to maintain a foreclosure suit. We do not undertake to pass upon the propriety of the trustee's bringing a foreclosure suit in the United States court after the present suit by the bondholder was begun; that court is the proper tribunal to adjudicate its own jurisdiction; what we decide is that on the hearing the proof failed to support the plaintiff's allegations entitling him to foreclose the mortgage, and that upon the Etna Company's providing for the tax executions the receiver should be discharged and the property turned over to its owner.

*Judgment reversed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*