Statement of the case.

JOHN O. MASSEY ET AL. *v.* C. E. WOMBLE ET AL.

1. HOMESTEAD. *Mode of alienation. Vested right. Act of* 1873.

   The owner of a homestead has no vested right in statutes prescribing the mode of its alienation. Accordingly, the act of April 18, 1873 (Laws, p. 78), requiring the wife to join in the conveyance by the husband of his homestead, applied to all conveyances thereafter made by him of his homestead, although he owned the same in fee in his own right prior to the passage of the act.

2. ACCOUNTING. *Rents and improvements.*

   The accounting in this case between the complainants and the defendant in possession, as to rents, improvements, taxes, etc., examined, and on all the proofs the result is not disturbed. *Staton* v. *Bryant,* 55 Miss., 261, distinguished.

FROM the chancery court of Yalobusha county, first district. HON. B. T. KIMBROUGH, Chancellor.

Appellees, the widow and children of W. H. Womble, filed this bill to establish their title to eighty acres of land, and to recover possession of the same from defendants. The land is part of the estate of W. H. Womble, who died in 1882, and who had occupied the same as his homestead since 1869, and up to the time of his death. In 1881 he executed a trust-deed on this and other lands to secure a debt due to merchants, but his wife did not join therein. The land was sold by the trustee, and purchased by J. O. Massey, who afterwards bargained it to J. B. Massey. J. O. Massey went into possession in 1883, under his purchase, and, since that time, many valuable improvements have been erected on the land, their cost really exceeding the value of the land without such improvements. The bill seeks to cancel the title of the Masseys because of the invalidity of the trust-deed under which they derived title, and also seeks to recover rents.

The answer sets up, among other things, that W. H. Womble had acquired a complete and perfect title in himself prior to the passage of the act of 1873, which required the

joinder by the wife in conveyances of the homestead, and that the statute could not operate retrospectively to take away or abridge his right of alienation, or impair his vested rights in the land, which, it is alleged, included the right to dispose of it as provided by the laws in force at the time the title was acquired.    To this point the opinion is directed.

In view of the opinion, it is not necessary to set out the facts or the arguments touching other errors assigned in the record.    The court decreed in favor of complainants, and referred the cause to a commissioner to ascertain the value and state an account of the improvements, taxes, rents etc.    The final decree, based on the report of the commissioner, allowed the defendants credit for the enhancement in the vendible value of the land, and for taxes paid and interest thereon, and charged them with the rental value of the land during their possession, and interest thereon.    This accounting showed a small balance due to defendants, and possession was decreed to complainants upon its payment within a fixed time.    In default of such payment, defendants were permitted to retain the land, free from complainants' claim, upon paying the difference between the entire vendible value of the land, as fixed by the commissioner, and the said balance due defendants on the accounting.    It was further decreed, that, if both complainants and defendants failed to avail of the permission thus given in the decree to make the payment or tender provided for, the land should be sold, and out of the proceeds the complainants should first be paid said difference, and the defendants, if a sufficiency was realized, should then be paid the balance due on the accounting, the surplus, if any, over and above the entire vendible value, to be shared in proportion to the sums decreed to each.    It is unnecessary to set out the evidence or the arguments in reference to the accounting, since the court does not pass absolutely upon the correctness of the basis on which the account was stated, but merely refuses to disturb the finding, in view of all the facts.

From this decree J. B. Massey has appealed.

*R. H. Golladay*, for appellant.

Before the passage of the act of 1873, W. H. Womble was invested with the sole right of alienation, since such right was inherent as an essential element of his ownership. The power of alienation is a fundamental and intrinsically valu- able attribute of title. It was a vested right of property, which he never waived, and which the act of 1873 could not take away. Womble was "entitled to hold, exempt, eighty acres of land." This was an option or privilege to hold or not. It is not shown that he ever indicated his purpose to claim the homestead. On the contrary, by conveying it, he manifested a contrary purpose.

Said statute cannot apply to invalidate the trust-deed, because (1) it would be retrospective; (2) it would impair vested rights. While homestead and exemption laws are favorably construed, it is generally held that they will not be given a retroactive effect unless such intention is clearly ap- parent. Thompson's Homestead & Exemptions, § 9. See 14 Am. St. Rep., 94; Wade, Retro. Laws, §§ 34, 35; *Hooker* v. *Hooker*, 10 Smed. & M., 599; *Stewart* v. *Davidson*, *Ib.*, 351; *Garrett* v. *Beaumont*, 24 Miss., 377; *Brown* v. *Willcox*, 14 Smed. & M., 127; 36 Am. Dec., 702; 112 U. S., 559; Myer on Vested Rights, 15.

This settled rule of construction cannot be varied because of supposed public policy. 2 Parsons, Contr., 249; *Winter* v. *Jones*, 10 Ga., 190. Further, as to what are retrospective laws, see *Sturges* v. *Carter*, 114 U. S., 519; Wade on Retro. Laws, § 1; Sedgw., Stat. & Con., 188.

The unrestricted *jus disponendi* before the passage of the act of 1873 was a vested right, and its enjoyment was pro- tected by the federal and state constitutions. *Rives* v. *Haynes*, 88 N. C., 310; 81 *Ib.*, 267; 101 *Ib.*, 382; 66 *Ib.*, 189; 18 Mo., 522; 70 Mich., 534; 67 Pa. St., 479; 1 Black. Com., 138; 13 Wall., 662.

To buy or sell property cannot be prohibited. 120 Ind., 575; 9 *Ib.*, 184; 79 Ky., 236; 16 Mass., 59; 36 Minn., 136.

Depriving property of one of its essential attributes, is depriving the owner of his property without due process of law. 90 N. Y., 48; 70 Mich., 534; 113 Pa. St., 431; 90 Ind., 185, 602.

That the *purpose* of the statute was to deprive the husband of the power to dispose of his homestead, has been expressly decided. *Bank* v. *Lyons*, 52 Miss., 181.

The accounting should have been had on the basis adopted in *Staton* v. *Bryant*, 55 Miss., 261, and *Worthington* v. *Wilmott*, 59 *Ib.*, 608.

*Phil A. Rush*, for appellee.

The right of the homestead is not an estate, and statutes which regulate its conveyance do not affect vested rights. The North Carolina cases relied on by appellant are inapplicable here, for in that state the homestead is an estate, and therefore a vested right. A different rule prevails here and in a large majority of the states. *Billingsly* v. *Niblett*, 56 Miss., 537; *Hill* v. *Franklin*, 54 *Ib.*, 632.

The passage of the act of 1873 took away no vested right of the husband, and gave no vested right to the wife. It did not prevent a sale, but provided for protection to the family by regulating the mode of its sale. The husband still has the right to sell, but, to do so, he must first abandon the homestead, unless his wife will join in the deed. 45 Miss., 264.

There is no error in the accounting. *Johnson* v. *Futch*, 57 Miss., 73; 47 *Ib.*, 434; 45 *Ib.*, 543.

Any other rule might result in the commissioner selling a place to pay a debt for improvements much greater than the entire value of the land and improvements. The successful litigant would thus be deprived of the fruits of his victory.

WOODS, J., delivered the opinion of the court.

The act of April 18, 1873, making it unlawful for a married man to sell or otherwise dispose of his homestead without the consent of his wife, and declaring conveyances made of the homestead by the husband invalid, unless the wife shall join

in such conveyance, vests no estate in the wife, and divests no estate out of the husband. It enlarges the operation of former homestead exemption laws, and changes the method of alienating homesteads themselves. The *jus disponendi* of the husband is not destroyed or taken away. The method of conveying is altered in the transfers of homesteads. In fact, the husband, by changing the home, may still sell any present homestead property without the wife's consent. The vested rights in his estate are not taken from the husband, and he had no vested right in any former exemption statute of the state. The former statute, under which he could sell the homestead, alone, might be altered or repealed at the pleasure of the legislature; and a new method of alienation, requiring the wife's consent thereto, is not an invasion of any vested right of the husband. We cannot agree that a change in the method of conveying a homestead may not be made at any time by the legislative power in the state, nor that any person can be heard to say that his vested rights are invaded by such mere change in the mode of alienation. As has been said, if the legislative power can alter or repeal exemption and homestead statutes, the requirement of the act of April 18, 1873, that thereafter husbands shall not alien the homestead without the wife's joinder in the conveyance, whereby the former method of conveying by the husband alone is abrogated, is no disregard of the husband's vested rights, unless he has a vested right in the former statute, which enabled him to convey without the wife's joinder therein; and this, of course, no one contends for.

No vested right is taken away from the husband; no estate whatever is vested in the wife; the mere method of alienation by the husband is altered, and that only so long as the lands are occupied as a homestead.

On all the proofs in the case, we do not feel authorized to reverse the decree because of the basis on which the master stated the account between the parties.

The facts in evidence are widely different from those in

*Staton* v. *Bryant*, 55 Miss., and the rule there prescribed is inapplicable to the developed case in the record before us.

*Affirmed.*