## MITCHELL et al. v. TOOLE et al.

(Circuit Court of Appeals, Fifth Circuit. February 13, 1923.)

No. 3950.

1. **Mortgages ⬡⟶37(2)—Parol evidence is admissible to show warranty deed was intended as mortgage.**

Parol evidence is admissible to show that a conveyance which was in the form of a warranty deed was in reality a mortgage.

2. **Witnesses ⬡⟶140(9)—Wife's interest in homestead does not render testimony incompetent against administrator.**

Under the Mississippi rule that the wife has no legal interest in homestead property, the title to which is in the husband, but only a veto power on the husband's right of alienation, a wife is not incompetent to testify as to the execution of a deed to the homestead in a suit by her husband against the administrator and heirs of the grantee.

3. **Appeal and error ⬡⟶1050(1)—Incompetent evidence is not prejudicial, where similar evidence is received from others without objection.**

Error in permitting testimony to be given by an incompetent witness is not prejudicial, where testimony to the same effect was given without objection by several other witnesses.

4. **Justices of the peace ⬡⟶130—Forcible entry and detainer proceedings not conclusive against suit to have deed declared a mortgage.**

Forcible entry and detainer proceedings before the justice of the peace are merely possessory, and, even if the legal title was involved therein, the equitable title remaining after conveyance in the form of a warranty deed, but which was in fact a mortgage, was not involved, so that a judgment awarding possession to the grantee named in that deed is not conclusive against the right to have the deed declared a mortgage.

5. **Mortgages ⬡⟶38(1)—Evidence held to show absolute deed was intended as a mortgage.**

Evidence, including a wife's testimony as to grantee's statements when the deed was executed, corroborated by the testimony of the notary public who took the acknowledgment, and subsequent admissions by the grantee, *held* sufficient to show that a conveyance in the form of an absolute deed was intended as a mortgage.

6. **Evidence ⬡⟶203—Statement over signature on note of illiterate is not admissible.**

A statement written over plaintiff's signature on the back of a note to the effect that it was given for rent on land owned by defendant was not an admission by plaintiff of defendant's title, where plaintiff could neither read the statement or sign his name.

7. **Mortgages ⬡⟶32(2)—Intent of grantee to secure title by pretending deed was mortgage does not aid him.**

Where the grantee in a deed, which was in form an absolute deed, represented to the illiterate grantor it was intended only as a mortgage, the fact that it was his intention at the time to secure to himself the fee-simple title does not affect the construction of the conveyance.

Appeal from the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Suit in equity by Sam Toole against W. B. Mitchell, to have a warranty deed executed by plaintiff and his wife to defendant declared a mortgage and canceled, in which Sallie Toole, the wife of plaintiff, was made a party defendant on motion of the original defendant, and

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Flora D. Mitchell and others, as administrator and heirs of the original defendant, were substituted for him after his death. Decree for plaintiff, and defendants Flora D. Mitchell and others appeal. Affirmed.

January 5, 1921, appellee filed his bill of complaint against W. B. Mitchell, alleging that an instrument, in form a warranty deed of land, executed January 18, 1913, by himself and his wife, Sallie Toole, to the said Mitchell, was in reality a mortgage to secure the sum of $3,000. The bill further alleges that the indebtedness had been paid, and prays for cancellation of the deed, and for general relief. The answer is a general denial, and pleads also, by way of estoppel, a judgment of a justice of the peace court, rendered in a proceeding brought after this suit was begun by Mitchell, as landlord, against Toole, as tenant, awarding possession of the premises to Mitchell. Mitchell died pendente lite, and the suit was revived against his administrator and heirs. In response to a motion by appellants that Sallie Toole be made a party complainant, the court permitted appellee to make her a party defendant. She answered, disclaiming any interest in the suit.

Appellee is an aged and ignorant negro, unable to read or write. All papers executed by him and introduced in evidence purport to have been signed by his mark. For about 30 years he has been engaged, with the assistance of his wife and several children, in raising cotton and corn on the land involved in this suit. In 1902 he purchased the land, which consists of about 60 acres, from one J. C. Ranier, and executed five purchase-money notes, of $500 each, payable in one, two, three, four, and five years, respectively. March 28, 1904, appellee and his wife, Sallie Toole, borrowed $2,500 from Mitchell, executed their note therefor, payable five years after date, and secured the same by a mortgage on the land. The indebtedness to Ranier was paid off with the money borrowed from Mitchell. April 20, 1912, Toole and his wife executed a deed of trust to Ranier upon their farm implements, live stock, crops for the current year, and upon the land, to secure no stated amount, but any indebtedness then due to him, and for supplies to be advanced. The evidence does not disclose that this deed of trust was ever satisfied of record.

January 18, 1913, appellee and his wife executed to Mitchell a warranty deed of their land, reciting a consideration of $3,000. Appellee made payments of $500 in each of the years 1913, 1914, 1915, and 1916, of $600 in 1917, and of $1,200 in each of the years 1918 and 1919, and in addition repaid to Mitchell the amounts advanced for supplies during the entire period. In 1918 appellee built and paid for a house on his farm for his married daughter. The house cost about $1,000. January 3, 1920, appellee executed a note to Mitchell for $2,000, payable November 1st following. On the back of the note, above his name, appears the following: "This note is given for the rent and furnish on land owned by W. B. Mitchell in Bolivar county, Miss." This note was not paid at maturity, and Mitchell claimed a lien upon cotton, then stored in a compress, which had been grown upon the land. Appellee thereupon claimed that the amounts theretofore paid were sufficient to extinguish his debt, and brought this suit.

Mitchell and appellee were accustomed to meet at Kline's store in Alligator, Miss., for their annual settlements. Appellee did not testify, doubtless for the reason that he was incompetent under section 1917, Mississippi Code of 1906, which provides that "a person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person," etc.

Sallie Toole was called as a witness for appellee. Appellants objected to her being allowed to testify, upon the grounds that she was appellee's wife and a party defendant. The court overruled this objection, and appellants excepted. This witness testified that at the time the deed sought to be canceled was executed she and her husband met Mitchell at Kline's store; that Mitchell requested them to sign a paper and acknowledge it before one Hightower, a notary public; that her husband executed the paper as requested, but that she refused to do so; that Mitchell accompanied her to another part of

the store, and, in order to secure her signature, signed and gave to her a paper which in substance provided that, when the money due to him should be paid, the property would be released and turned back to her husband; that she thereupon signed the paper, which was understood to be a mortgage, and acknowledged the execution thereof before Hightower as notary public; that she took home with her the paper signed by Mitchell, showed it to appellee's children, and put it away for safe-keeping; that she had searched for the paper before giving her testimony, but had been unable to find it. Several of appellee's grown children testified that they had read the paper claimed to have been delivered by Mitchell to Sallie Toole, and corroborated the testimony of that witness as to its contents.

Hightower, the notary public who took the acknowledgment of Toole and his wife to the deed, testified that Sallie Toole expressed an unwillingness to sign it; that Mitchell took her out of his presence and had a conversation with her, after which she returned and signed the deed; that Mitchell said that, "whether they paid him back or not, the place would be taken care of, and he would return the property to them, and he told me he gave them an instrument to that effect, and I quizzed him about this instrument not being acknowledged or recorded, and he said it was not necessary"; that he saw the paper, but did not read it. A farmer, Mr. Callicott, who lived in the neighborhood, testified that in 1918 he asked Mitchell if the Toole farm was for sale, and that Mitchell replied that it was not; that he held title to it as security for a loan, and had promised to reconvey to appellee upon the payment of the loan.

There was evidence for plaintiff that the farm was worth $100 per acre, and for defendant that it was worth about $50 per acre.

Mitchell lived in Illinois, but had been coming to Mississippi for a number of years. He became acquainted with appellee in 1904, and was familiar with the value of his farm. Appellants proved that Mitchell paid the taxes on the land which accrued after the date of the deed, and introduced in evidence books of account, kept by Mitchell, in which payments made by, or on behalf of, appellee were entered as rents. Chris. Weller, who was Mitchell's neighbor in Illinois, was called by appellants as a witness, and testified that in January, 1913, at Alligator, he heard a conversation between Mitchell and Sam Toole in which Toole stated that he had a mortgage on his farm, which was about to be foreclosed, and asked Mitchell to buy the farm and rent it to him; that Mitchell replied he would go out and look at the place; and that the next day the witness accompanied Mitchell to Toole's farm, and, after an examination of it, Mitchell agreed to buy it.

The District Court found from the evidence that the deed was intended by the parties to be a mortgage; that, after charging appellee with interest at the legal rate, and giving credit for the partial payments, a balance of $109.44 was due to appellants; and decreed a cancellation of the deed, upon the payment by appellee of that amount into the registry of the court.

Audley W. Shands, of Cleveland, Miss. (Shands, Elmore & Causey, of Cleveland, Miss., on the brief), for appellants.

John W. Crisler and K. A. Carney, both of Clarksdale, Miss., and Chas. W. Crisler, of Jackson, Miss., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge (after stating the facts as above). [1] It is contended by the assignments of error that appellee's wife, Sallie Toole, was not a competent witness; that the judgment rendered in the proceedings before the justice of the peace constitutes res judicata; and that there is not sufficient evidence to sustain the decree. It is of no consequence that the conveyance is in form a warranty deed. Parol evidence was admissible to show that in reality it is a mortgage. Bolin v. Wilkes, 249 Fed. 705, 161 C. C. A. 615.

[2, 3] We do not think the court erred in admitting the testimony of Sallie Toole, even assuming that one of the grounds of objection to that testimony was that the property involved was appellee's homestead. The rule in Mississippi appears to be that the wife has no legal interest in homestead property, the title to which is in the husband, but only a veto power upon the husband's right of alienation. Massey v. Womble, 69 Miss. 347, 11 South. 188; Scott v. Scott, 73 Miss. 575, 19 South. 589. But if appellee's wife was not a competent witness, because of interest, prejudicial error is not shown, since testimony to the same effect as hers was given without objection by several other witnesses.

[4] The proceedings before the justice of the peace were merely possessory. It is doubtful if the legal title was at all involved. Certainly the equitable title, which is sought to be established in this case, was not. Wilson v. Peacock, 111 Miss. 116, 71 South. 296.

[5] There was abundant evidence to show that it was appellee's intention merely to secure his indebtedness to Mitchell. While Sallie Toole's testimony, to the effect that Mitchell executed and delivered to her his written agreement to hold the title in trust for appellee, deserves close scrutiny, yet it appears to be well corroborated by the notary public.

Mitchell's admission, made as late as 1918, that he held the title in trust, strongly corroborates other evidence for appellee. The case depends, not upon the sufficiency of the evidence, but upon the credibility of the witnesses. Much support of the direct evidence for appellee is found in the circumstances that a substantial house was built upon the land and paid for by appellee, that much larger amounts than usual were paid in 1918 and 1919, and that, immediately upon being informed that Mitchell claimed title, appellee brought suit to cancel the deed upon which that claim was founded. Weller's testimony for appellants indicates that Mitchell was unfamiliar with the property, but the District Judge could well have disregarded that testimony. Mitchell had been thoroughly familiar with the property, and had known its approximate value since 1904. Payment of taxes is not of much importance. It is not unusual for a mortgagee to pay taxes in order to protect his security. Besides, Mitchell was constantly making advances for the raising of crops, for supplies, and for the needs of appellee. The fact that payments were denominated rents in his books of account is entirely consistent with the theory that Mitchell was making evidence for himself after he came into possession of the deed which purported to convey to him the absolute title.

[6, 7] The statement, over appellee's signature written on the back of the note of January 3, 1920, to the effect that the note was given for rent on land owned by Mitchell, manifestly does not constitute an admission by appellee, who could neither read the statement nor sign his name. It would make no difference if it was Mitchell's intention at the time the deed was executed to secure to himself the fee-simple title, and only to pretend to the grantors that he was merely taking security for the debt due to him.

It is fair to assume that the debt to Ranier secured by a deed of trust in 1912 has been paid; but it is not clear from the testimony who paid it. If Mitchell did, it is probable that he would have obtained a satisfaction and recorded it. At any rate, the balance found by the court to be due from appellee to Mitchell is not claimed to be incorrect. Giving due weight to the findings of fact by the District Judge, we are unable to conclude that he committed error in giving credence to the testimony adduced by appellee.

The decree is affirmed.