**FIRST NAT. BANK OF ATLANTA et al. v. SOUTHERN COTTON OIL CO. et al.**

No. 7575.

Circuit Court of Appeals, Fifth Circuit.

June 7, 1935.

Jno. R. L. Smith and Furman Smith, both of Macon, Ga., Frank C. Tindall, of Atlanta, Ga., and E. W. Jordan, of Sandersville, Ga., for appellants.

Scott Russell, of Macon, Ga., T. M. Cunningham and F. M. Oliver, both of Savannah, Ga., C. L. Shepard, of Fort Valley, Ga., Pope F. Brock, of Atlanta, Ga., W. C. McMillan, of Macon, Ga., and Robt. S. Parker, of Atlanta, Ga., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This suit was instituted by the Southern Cotton Oil Company by filing a bill in equity against L. B. Holt, individually and as trustee under a deed by C. G. Rawlings, conveying certain farm property to him as trustee to secure 55 notes, made by Rawlings, in the sum of $200,000. The suit was based on other notes given by Holt as trustee, indorsed individually by himself, for approximately $20,000, in payment for fertilizer and seeds bought by Holt and used in the cultivation of farms conveyed by the said deed. The bill alleged mismanagement, incompetency, and insolvency of Holt, and prayed for an injunction to restrain disposal of the property and for a receiver. On a former appeal we affirmed the action of the District Court in granting an interlocutory injunction and appointing a temporary receiver for the property, but our decision went no further. Williams v. Southern Cotton Oil Co. (C. C. A.) 45 F.(2d) 387. Thereafter, the case was referred to a master to permit the establishment of claims and to fix the order of their payment. The master reported, giving preference in payment to the Southern Cotton Oil Company, and other claimants similarly situated, who had furnished supplies to Holt for use in the cultivation of the farms, classing such debts as expenses of administration, and postponing payment of the mortgage notes thereto. The District Court overruled exceptions to the master's report and entered judgment affirming it, at the same time appointing permanent receivers and ordering the property sold to pay the debts. It is conceded that the proceeds of the property will not be enough to pay all creditors in full. Appellants are all holders of notes issued pursuant to and secured by the deed, and claim a first lien on the property. Appellees are persons who furnished supplies to Holt as trustee, and who were given preference by the judgment. For convenience, we will hereafter refer to the parties, respectively, as noteholders and supply dealers. The bona fides of the noteholders is not challenged, and there is no dispute as to the amount of the claims as fixed by the master. The sole question presented on this appeal is whether the supply dealers are to be paid by preference over the noteholders. Its determination depends upon construction of the deed.

■ The deed is inartificially drawn, is lengthy and ambiguous, and contains unrelated provisions. Much confusion could have been avoided by dividing it into two separate documents. In construing it the intention of the parties must govern, and this may be ascertained by its provisions, considered in the light of the circumstances surrounding its making. Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637; Gisborn v. Charter Oak Life Ins. Co., 142 U. S. 326, 12 S. Ct. 277, 35 L. Ed. 1029.

The deed, dated December 26, 1925, describes the property conveyed and certain incumbrances thereon. Omitting surplusage and redundancy, arranging its provisions in logical order, and substituting names for "first party" and "party of the second part," the material provisions of the deed are substantially as follows: In consideration of the sum of $200,000, receipt whereof was acknowledged, Rawlings granted, sold, and conveyed unto Holt the property described, with full warranty, to have and to hold the said bargained premises in fee simple, but in trust nevertheless, under and subject to the conditions and provisions set forth, for the benefit and security of all present and future holders of the notes issued under and secured by the indenture. It provided that the conveyance was made under the provisions of the existing Code of the state of Georgia to secure indebtedness, evidenced by 55 notes of even date, made by Rawlings to the order of Holt, as trustee, or bearer, for the principal sum of $200,000, each note maturing one year after its date, with interest at 8 per cent. per annum, and conditioned to pay all costs of collection; that upon maturity of said notes Rawlings shall have the right to renew the notes for one year; and that so long as the said indebtedness or any part of it shall remain unpaid, said trustee, as the grantee, and as trustee for the holders of the said notes, and for the security whereof the conveyance was made, shall be and is hereby charged and intrusted with the operation, conduct, and maintenance of the farming operations upon said lands herein conveyed. Rawlings waived his homestead rights. The property conveyed as security was burdened with two mortgages approximating $44,500, and consisted of over 20,000 acres of farm lands, with live stock, farming implements,

cotton gins, etc., together with city lots and improvements and personal property not on the farms.

The deed authorized Holt to sell the notes at par, for the purpose of paying the existing debts and to sell not more than $50,000 of them for paying expenses of operating the farms. In case of default on any note, he was authorized to accelerate the maturity of the whole debt. In great detail, Holt was authorized to operate and administer the farms, to pay taxes, insurance, and other fixed charges, employ labor, purchase necessary supplies, such as fertilizer and seed, as might be necessary in his discretion for the proper preservation of said lands as security for said indebtedness or any part thereof, to be paid for out of the proceeds of the farming operations. He was also authorized to mortgage or sell the crops and the whole or any part of the property, in his discretion, at public or private sale, to pay such claims and the antecedent debts, and to pay off the $200,000 of notes. Holt was appointed attorney in fact to execute deeds for Rawlings.

The deed also authorized Holt, in his discretion, to organize a corporation with a capital stock of $500,000, represented by shares of either par or nonpar value, and to issue bonds, not exceeding $300,000, secured by the property, but to become effective as a first lien only upon satisfaction of the indebtedness secured by, and the cancellation of, the security deed.

Holt was allowed a commission of 20 per cent. for selling the notes, was authorized to employ attorneys, both generally and for the organization of the corporation, and to fix their fees, to pay himself an annual salary of $10,000 out of the net proceeds of the farming operations, to fix and pay himself reasonable compensation for his services in organizing the corporation, and to issue stock to himself and his attorneys for payment of services in that respect; the balance of the stock, payable to Rawlings, to be held by Holt in trust for Rawlings, and to be voted by Holt for the election of directors and at stockholders' meetings, under proxies, until the outstanding bond issue should have been satisfied.

The deed obligated Holt to make an accounting to Rawlings, and to pay him out of the net proceeds of the farming operations an amount sufficient, in Holt's discretion, for the proper maintenance and support of Rawlings, not exceeding $300 per month. The deed was properly recorded.

The deed contains no provision subordinating payment of the notes secured by it to costs of administration; nor does it give the supply dealers a lien on the land of any rank. Under the law of Georgia they might have had a lien on the crops, but no statutory lien on the land.

There is no provision in the deed that the noteholders should share in the profits of the farms or have any right of ownership in the land, in default of payment of the loan or otherwise. Their only right was security for the return of their out of pocket money, with interest. While Holt had the right to sell the land, there is no provision in the deed that he could do so free of liens.

It may be conceded that if the deed, as contended by the supply dealers, is to be construed as creating an express trust for the benefit of the noteholders, the supply dealers are entitled to be paid by preference over them. Sanders v. Houston Guano & Warehouse Co., 107 Ga. 49, 32 S. E. 610. Affirmance of the judgment rests upon this narrow point.

The noteholders contend the deed has a double aspect, primarily as a security deed, a usual form of mortgage in Georgia, pledging the property to secure the notes, and, secondly, as a power of attorney, authorizing Holt to administer the property for the benefit of Rawlings. Holt testified before the master. While this testimony was improperly excluded, it has been brought up in the record and may be considered in connection with other evidence in determining the intent of the parties. Mitchell v. Toole (C. C. A.) 287 F. 25. The following facts are undisputed:

C. G. Rawlings was a prominent citizen of Georgia, residing in Sandersville. He was a banker, interested in a cotton oil refinery, owned and operated large farms, and owned other real and personal property, the whole estimated to be worth from $500,000 to $800,000. He was charged with arson, and was also convicted of murder, and sentenced to life imprisonment, but an appeal was pending. He was considered solvent, but his personal credit was entirely gone and he was unable to borrow money. There were claims against him of approximately $120,000, some of which were liens

upon his property. The property had been levied upon, and Holt had been appointed receiver for it by a state court and had been administering it for over a year. Although he was later adjudicated bankrupt at the time the deed was executed Holt was a prominent citizen of Georgia, residing in Sandersville, also a banker, owning controlling interests in a national bank and a string of state banks, was a man of considerable means, and solvent. After the deed was executed, Holt sold notes to the extent of $195,000, buying a large amount himself, which he subsequently disposed of. All of them are now in the hands of third persons. He told all persons acquiring the notes they would have a first lien on the property. Deducting his commission, he had enough money to pay off antecedent debts and have a capital of about $36,000 to operate the farms. He paid off the underlying mortgages, but apparently did not pay off all the old debts, and the operation of the farms was at a loss.

Considering the circumstances attending the execution of the deed, it is apparent that while Rawlings' situation was desperate, he was not entirely without hope. Although convicted of murder, an appeal was pending, and if the conviction were not reversed he could still look forward to the possibility of a pardon or commutation of sentence. He was in danger of losing his property, but he thought he had an equity in it of over $600,000. It would be unreasonable to presume that he intended to divest himself of this equity for the payment of a mere $300 a month. Because of his incarceration he was unable to either operate the property or enter into negotiations for a loan. The logical solution of his difficulties was to select some one to act for him to negotiate the loan and operate the property. No doubt he had full confidence in Holt, and thought him a desirable person. It must have been contemplated that the operation of the property would be profitable and the notes would be paid in two years out of the proceeds of the business. It is clear that Rawlings expected to get his property back at the end of two years at most. If the notes were paid the deed was canceled. If the corporation were organized, the notes would be paid out of the proceeds of the bond issue. Ownership of the stock in the corporation would be practically the same as ownership of the property. It is also equally clear that no one would have purchased the notes if he thought superior liens on the property would be created by its administration.

It is usual when a large loan is made on the security of real property, evidenced by numerous notes or bonds to be sold to the public, to execute a deed of trust and to appoint a trustee. Such deeds are in legal effect mortgages. Jones on Mortgages (8th Ed.) § 77 and authorities cited; Brantley v. Wood, 97 Ga. 755, 25 S. E. 499; McGuire v. Barker, 61 Ga. 339; Ward v. Lord, 100 Ga. 407, 28 S. E. 446; Scott v. Hughes, 124 Ga. 1000, 53 S. E. 453. Cf. Caldwell v. Hill, 179 Ga. 417, 176 S. E. 381. It is the duty of the trustee to see that taxes and other fixed charges are paid and, if a default occurs, to enforce the provisions of the mortgage for the benefit of the note or bond holders. But the control and management of the property is not taken out of the hands of the owner. In this instance, as Rawlings could not act for himself, it was necessary to appoint an agent. It would have been better to have appointed a different person in each capacity, but there would be nothing illegal or prejudicial to any creditor to appoint the same man to serve in both capacities, if he were honest and competent. That Holt was to account to Rawlings and was given power of attorney to execute deeds and vote stock is indicative that he was to act as Rawlings' agent.

In support of the contention that the deed created an express trust, the supply dealers point out that in many places it refers to Holt as "trustee for the holders of said notes," and that it contains no express defeasance clause. They cite Gisborn v. Charter Oak Life Ins. Co., 142 U. S. 326, 12 S. Ct. 277, 35 L. Ed. 1029; and also rely upon section 67-1301 Ga. Code 1933.

We attach no importance to the fact that in various places Holt is designated as trustee for the noteholders. We consider that a mere figure of speech without any legal significance. The case of Gisborn v. Charter Oak Life Ins. Co., supra, may be easily distinguished on the facts from the case at bar. It is not of controlling authority. It is well settled that where a conveyance is made simply for security, it is unnecessary that it contain an express condition of defeasance, as that is implied by the law. Reagan v. Aiken, 138 U. S. 109, 11 S. Ct. 283, 34 L. Ed. 892; Ward v. Lord, 100 Ga. 407, 28 S. E. 446.

Section 67-1301 Ga. Code, 1933, provides, inter alia, that a conveyance of real property to secure a debt shall pass title to the grantee until the debt is paid and shall be held by the courts to be an absolute conveyance, subject to the right reserved by the grantor of the deed, and is not a mortgage. The difference between a conveyance with the right to redeem and a mortgage is well understood. Wallace v. Johnstone, 129 U. S. 58, 9 S. Ct. 243, 32 L. Ed. 619. No doubt the section would apply to a conveyance direct to a creditor reciting certain conditions, but we do not consider it affects a conveyance to a trustee with provisions similar to those here shown. No controlling decision to the contrary has been cited.

It is apparent that the primary purpose and intention of Rawlings was to execute a security deed for the protection of all persons purchasing the notes, and future holders of them, and to grant a first lien mortgage for that purpose. It is clear that he did not intend to make a sale with the right of redemption reserved nor to execute an express trust with the, at the time, unknown purchasers of the notes as beneficiaries. While the powers and authority granted Holt are unusual in security deeds, they are no greater than Rawlings would have if he were managing the property. Construing pertinent provisions together, as above set out, the deed is a security deed and a mortgage. The other provisions constituted Holt the agent and attorney in fact of Rawlings. This did not defeat the primary purpose of the deed. As it follows that the judgment appealed from must be reversed, it is unnecessary to discuss other contentions of appellants.

The judgment classified the claims and fixed the order in which each class was to be paid, as follows: First, certain unpaid claims against Rawlings. There is no objection to this. Second, expenses of administering the trust, including all expenses in the operation of the farms. Third, notes issued under the trust deed. The order of payment as to the second and third class should be reversed, and notes issued under the trust deed placed second in order of payment.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.