VARNER *et al. v.* ATLANTA LAUNDRIES INC. *et al.*

No. 10816.   MARCH 13, 1936.   REHEARING DENIED MARCH 24, 1936.

*King & Partridge* and *Fulton Varner,* for plaintiffs.

*Herbert J. Haas, George B. Tidwell, Joseph F. Haas,* and *Alston, Alston, Foster & Moise,* for defendants.

BECK, Presiding Justice. (After stating the foregoing facts.) It has long been settled that an amendment to meet a ruling on a demurrer waives any right to except to the order sustaining the demurrer. When a demurrer to a petition is sustained, the plaintiff may either take the position that his petition is good and except to the order sustaining the demurrer, or he may acquiesce in the correctness of the ruling on the demurrer and amend to meet it. By amending to meet the demurrer he agrees to the correctness of the

154

ruling, and can not thereafter except to the ruling. It is immaterial whether the ruling on the demurrer was correct or not. See *Wallon* v. *Sikes,* 165 *Ga.* 422 (5) (141 S. E. 188) ; *Baker* v. *Calloway,* 167 *Ga.* 908 (147 S. E. 562) ; *Norton* v. *Brown,* 173 *Ga.* 146 (3) (159 S. E. 702). Many other decisions by this court are to the same effect.

That the order sustaining the demurrer in the present case was correct is also established by authority. We call attention to the fact that this was not only a general demurrer, but it was a demurrer which pointed out particularly that under the terms of the indenture securing the bonds sued on by the plaintiffs it is provided that until certain conditions precedent have been fulfilled the right to sue on the bonds vests solely in the trustees under the indenture. In sustaining the demurrer the court held that the plaintiffs can not sue on the bonds until those conditions precedent shall have been fulfilled. In the face of the bonds particular reference is made to the terms of the indenture securing the bonds, which provides that the exclusive right of action is vested in the trustees under the indenture, and that the holder of a bond or coupon "shall not have the right to institute any suit, action, or proceeding at law or in equity upon or in respect of this indenture, or for the execution of any trust or power hereunder, or for any other remedy under or upon this indenture or the enforcement of any right he may have upon his bond or bonds, coupon or coupons, unless such holder shall previously have given the trustees written notice of an existing default, and unless also the holders of twenty-five per cent. in amount of said bonds then outstanding shall have made written request upon the trustees, and shall have afforded to them reasonable opportunity to proceed to exercise the powers hereinbefore granted, or to institute such action or such proceeding in their own names; . . and such notification, request, and offer of indemnity are hereby declared, in every such case, at the option of the trustees, to be conditions precedent to the execution of the powers and trusts of this indenture, and to any action or cause of action for foreclosure or for the appointment of a receiver, or for any other remedy hereunder; it being intended that any one or more holders of said bonds and coupons shall not have any right in any manner whatsoever to affect, disturb, or prejudice the title and interest created by this indenture by his or their action, or to enforce any right hereunder,

except in the manner herein provided; and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided, and for the equal and proportionate benefit of all holders of said bond or bonds, coupon or coupons." There is no allegation in the petition that the conditions precedent, of demand in writing by the holders of twenty-five per cent. in amount of the outstanding bonds, and of the proper offer of indemnity to the trustees, have been fulfilled. The court held that this provision and the other similar provisions of the indenture constituted a contract between the bondholders and the other parties, and that the bondholders and the other parties are bound by these provisions. Such provisions are ordinarily found in indentures securing a large number of bonds. The bondholders constitute a class which agree among themselves that one holder of bonds will not take any action without the concurrence of a certain number of his fellow bondholders. When he becomes a bondholder he so agrees, and agrees that he will not act alone and against the judgment of the other bondholders. In upholding such a provision it was said, in Seibert v. Minneapolis & St. Louis R. Co., 52 Minn. 148 (53 N. W. 1134, 20 L. R. A. 535, 38 Am. St. R. 530), that such a provision is inserted in indentures "in the common interest, . . in order to avoid the risk of rash or arbitrary proceedings which might result in great injury to the security," and that the inclusion by the parties of such provisions "is merely the imposition of certain conditions upon themselves in respect to the exercise of that right" of foreclosure.

Inasmuch as under the indenture securing the bonds there are provisions under which the plaintiffs have no cause of action until the conditions precedent have been fulfilled, and it appearing that there is no allegation in the petition showing that the conditions have been fulfilled, and that there is an entire absence of fulfillment of the conditions precedent, there is no cause of action in the plaintiffs, but the right of action rests entirely with the trustees. Taking into consideration the petition and the amendment, no cause of action was shown in the plaintiffs. The allegations of insolvency of Atlanta Laundries Inc., and of default in payment of interest, etc., did not have the result of creating a cause of action in the plaintiffs. There is no charge of bad faith, and apparently no other holders of bonds agree with the plaintiffs that

the indenture should be foreclosed. It may be that the statute of uses has been made in substance a part of our statutory law; but this does not give the plaintiffs a right of action, in view of the provisions of a valid contract. The holders of more than seventy-five per cent. of the outstanding bonds have entered into a contract with the committee, and have transferred their bonds to that committee, and the transfer vested title to the bonds in the committee, and the contract gave to the committee power to act for the bondholders. There is nothing wrong in such a contract. It was voluntarily entered into, and not in any wise against public policy; and there is nothing unusual in the contract. Similar contracts in the course of business are frequently entered into. It is not material when the depositing bondholders transferred their bonds to the committee, it being a fact that the bonds are now held by the committee. It is not alleged that the committee is in any wise acting in bad faith, or otherwise than for the best interests of those who deposited their bonds with the committee. We are of the opinion that what was said by this court in *Etna Steel & Iron Co.* v. *Hamilton,* 137 *Ga.* 240 (73 S. E. 8), is applicable in this case. It was there said: "We do not think, under these circumstances, that the plaintiff brought himself within the terms of the mortgage, so as to give him the right of foreclosure under the contract because of a failure of the trustee to institute proceedings. The trust deed expressly stipulated that the exclusive right of action was vested in the trustee until refusal on its part to act, and no bondholder should be entitled to enforce performance of its covenants until after demand had been made on the trustee, and the refusal of the trustee to act in accordance with such demand. . . The plaintiff failed to offer the indemnity required, and there was no refusal on the part of the trustee to proceed to enforce the trust deed. Under the undisputed facts the plaintiff had no right as a bondholder to institute the suit in opposition to the right of the trustee." In that opinion Justice Evans quoted with approval a statement from 3 Cook on Corporations, 830, as follows: "But it does not follow that a right to file a proceeding to protect the property from an impending peril will justify a bondholder to institute proceedings to foreclose the mortgage contrary to its terms." And there are decisions of other courts laying down the same principle. In Employers Reinsurance Corporation *v.* Boston Mutual Life

Insurance Co., 45 Fed. (2d), 594, it was said by the Circuit Court of Appeals: "The suit might well have been dismissed on another ground. In the absence of a refusal by the trustee to bring suit, and in the absence of fraud, which is not charged, appellant, as a minority bondholder, had no standing in court, since the right to foreclose under the terms of the mortgage existed only in favor of the trustee. The right of a minority bondholder to foreclose under the facts alleged was withheld and denied by the provisions of the mortgage. It is well settled that those provisions conferred a valuable right on the majority bondholders, which a minority bondholder in the absence of fraud could not destroy or impair by bringing suit." See also General Electric Co. v. LaGrande Edison Electric Co., 87 Fed. 590, where it was held that "A holder of bonds secured by a general mortgage to a trustee for the benefit of all the bondholders, although the right to sue belongs to him individually, may not bring a suit to foreclose the mortgage, either for the interest or the principal due, without alleging that the trustee has been requested to bring the suit and has refused, or without showing some other reason why the trustee may not represent him in the suit." Other cases, both Federal and State, holding the same principle might be cited. There is nothing contrary to what is here ruled, in *Caldwell* v. *Hill*, 179 *Ga.* 424 (176 S. E. 381, 98 A. L. R. 1124). In that case the exclusive right of the trustee to foreclose was recognized. It is our opinion, supported by the rulings in the cases cited above, that the court did not err in dismissing the case on demurrer.

*Judgment affirmed. All the Justices concur.*