**DEL DRAGO**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 192, Docket No. 22952.

United States Court of Appeals Second Circuit.

Argued April 13, 1954.

Decided July 19, 1954.

Joshua Okun, New York City, for petitioner.

William L. Norton, Jr., Sp. Asst. to Atty. Gen., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., Washington, D. C., on the brief), for respondent.

Before CLARK, HINCKS, and HARLAN, Circuit Judges.

CLARK, Circuit Judge.

The petition for review here challenges the action of the Tax Court in sustaining the Commissioner's assessment of a deficiency in the taxpayer's income taxes for 1945 based upon the inclusion in his income of income from British securities held by a bank in London in his name. Taxpayer's contention, rejected by Judge Opper below, is that he had made a declaration of trust of the se-

curities on February 1, 1945, in favor of his nephew, Urbano Del Drago, a national and resident of Italy. The stipulated facts showed the following:

Taxpayer in the late 1920's and early 1930's had become liable on a guarantee to his nephew given as an outgrowth of the settlement of the estate of Don Filippo Del Drago, father of taxpayer and grandfather of Urbano who had died in 1913. Although Urbano made repeated demands upon him, taxpayer was financially unable to make any payment until the death of his wife in 1937 and the settlement of litigation as to her estate in 1942. By this time the Second World War prevented any dealings with Urbano. On or about Christmas, 1944, petitioner in New York cabled a relative in Portugal: "Tell Urbano everything is okay." At about this time petitioner notified his London bank, the National Provincial Bank, to liquidate his non-governmental assets and to buy a sufficient further number of British government bonds to raise his total holding to £50,000. This order was thought to be completed by February 1, 1945, but, due to what is termed "a mathematical oversight" on the part of the Bank, the proceeds actually fell short of the planned amount by £190.15.8—an error rectified by the purchase of a further bond on March 13, 1945. Taxpayer kept these securities intact until the £50,000 was eventually transferred to Urbano in June, 1950. In addition the account contained £4,866.3.11, which taxpayer drew upon from time to time for his own personal use. While taxpayer testified that from Christmas, 1944, he intended the securities in question for Urbano in payment of the old debt, yet he actually gave no notification either to Urbano or to the Bank during 1945 or until much later, as hereinafter stated.

These are all the direct facts bearing upon the claim of a declaration of trust on February 1, 1945, which, as Judge Opper not unnaturally says, thus encounters what seem to be "insuperable difficulties." But taxpayer tries to supply deficiencies by proof of his later communications beginning not earlier than July 15, 1946. At this time he telephoned and wrote to Hargrove & Co., London Solicitors, explaining his obligation to Urbano and the "agreement of settlement" which "is to be considered as being made December 26, 1944," and asking if British War Bonds could be transferred to Urbano, an Italian citizen. A reply from Hargrove upon consulting with the Bank showed that British restrictions upon transfer of funds would prevent any transfer to Urbano. A considerable correspondence with Hargrove over a period of years ensued whereby taxpayer sought several means of effecting the transfer; thus in June, 1947, taxpayer inquired as to the possibility of a trust for Urbano, with the Bank as trustee, while early in 1948 he learned from Hargrove that he might eventually accomplish his purpose by a will to Urbano, which he proceeded to have prepared and executed. The restrictions being lifted in 1950, he succeeded in then effecting the transfer. During all this period he did not draw the income of the securities for himself, but had it held for Urbano, except for certain amounts paid from the beginning of 1945 (by understanding with Urbano, the time or terms of which are not made clear) for a quarterly allowance of £125, increased in the fall of 1947 to £180, to Urbano's brother Alfonso in Sydney, Australia.

The first communication to Urbano appearing in the record, after the indirect communication via the relative in Portugal at Christmas, 1944, is a letter of January 26, 1947, wherein taxpayer recounts that for some time he has been endeavoring to arrange for the transfer to Urbano of the securities still deposited in his name at the National Provincial Bank, with a view to "final payment of my obligation towards you as agreed upon between us nearly two years now," that the war restrictions had prevented, that he was quite grieved over this, that he wanted Urbano to know that it was his intention to have the securities "transferred to your name as soon as it is possible to do so," and that "The assignment of the securities is understood

to have taken place on January 1, 1945, so that the interest on them accrued as from that date forth in your favor." He also enclosed copies of his correspondence with Hargrove beginning July 15, 1946.

 The general requirements for the making of a trust are well settled and we agree with the Tax Court in concluding that they are not at all present here for the year 1945 if indeed they can be found later. No particular formalism is necessary; nor is notification to either the beneficiary or the depositary of the trust res an absolute prerequisite. But there must be not only an intent to make a trust, but also some "manifestation of intention," *i.e.*, "the external expression of intention as distinguished from undisclosed intention." 1 Restatement, Trusts § 2, comment *g* (1935), and see id. § 4, which requires such manifestation of intention "expressed in a manner which admits of its proof in judicial proceedings." See also id. §§ 23, 24; 1 Scott on Trusts §§ 23, 24(1939); 1 Bogert on Trusts and Trustees § 45 (1951); Beaver v. Beaver, 117 N.Y. 421, 428, 22 N.E. 940, 6 L.R.A. 403; Martin v. Funk, 75 N.Y. 134; O'Keefe v. Equitable Trust Co., 3 Cir., 103 F.2d 904. Some question is made whether the law of England, rather than that of New York, does not govern; but we need not settle this matter, since there is nothing in the record to suggest a difference. Indeed, it is common knowledge that our law of trusts comes from and is the English law. 1 Restatement, Trusts, Introductory Note (1935); 1 Scott, op. cit. supra § 1.1 et seq.; 1 Bogert, op. cit. supra § 2 et seq.; Caldwell v. Hill, 179 Ga. 417, 176 S.E. 381, 98 A.L.R. 1124. Up until mid-1946 there was no manifestation of an intent by taxpayer even to make a transfer of the securities. The highly indefinite cable to the relative in Portugal was inadequate, as taxpayer concedes. And the change of the form of securities without more was a colorless circumstance clearly falling short of an external expression of intent in a manner admitting of proof in a judicial proceeding.

Nor do the events from 1946 on assist materially. All this evidence is of doubtful character to affect the issue; for it is the intention of the settlor at the time of creation of a trust, and not his subsequent intention, which is determinative. Only as this later evidence throws light upon taxpayer's intent in 1945 is it of value. 1 Restatement, Trusts § 4, comment *a* (1935). Passing the question whether it does afford any retroactive light whatsoever, it is here necessary to point to its equivocal nature. Outside of a few references to the agreement for a transfer supposedly made in December, 1944, it refers only (a) to prospective planning designed (b) to accomplish a future transfer of the securities. And the two references to supplementary devices to that end, the then creation of a trust and the execution of a will, are steps quite inconsistent with an existing and valid trust in Urbano's favor.

██ Hence there was no basis for the finding of a declaration of trust in 1945, and the Tax Court's decision is correct. This makes it unnecessary to consider alternative claims by the respondent, including the contention that had such a trust been attempted it would have been invalid under the then existing English law and restrictions. We should, however, make a brief mention of an apparently new claim on the part of taxpayer, namely, that he should be allowed a deduction of the accumulated income (which he never actually drew or used) as interest paid, at least constructively, on a liquidated debt under I.R.C. § 23 (b), 26 U.S.C. § 23(b). But passing all other difficulties in the way of accepting the might-have-been for the actual, the facts recounted above show not only no declaration of trust, but also no steps taken by taxpayer during 1945 establishing or indicating that he owed Urbano this £50,000 worth of securities. The statutory deduction of " 'interest on indebtedness' means compensation for the use or forbearance of money." Deputy v. duPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416. The circumstances do suggest that taxpayer was planning

an eventual acknowledgment of a definite liquidated obligation to Urbano, but the matter was entirely indefinite and inchoate at that time. It is quite fanciful to think of Urbano as entitled to compensation for forbearance to use securities of which he then had not the remotest knowledge.

Affirmed.